

1345 AVENUE OF THE AMERICAS – 11TH FLOOR
NEW YORK, NEW YORK 10105
TELEPHONE: (212) 370-1300
FACSIMILE:   (212) 370-7889
www.egsllp.com

June 15, 2018

**VIA ECF**

Hon. Ramon E. Reyes, Jr.
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East, Room N208
Brooklyn, New York 11201

       Re: *Mota Leal, et al. v. Star Brite Flatbush Inc., et al.*
          **16-cv-5294 (SJ) (RER)**

Dear Judge Reyes:

  We represent Defendants Star Brite Flatbush Inc. ("Star Brite"), Ajay Sarin ("Sarin"), and Anita Khanna (also referred to as "Anita Sarin"; hereinafter, "Khanna") in the above-referenced matter (the "Action"). We write jointly with counsel for Plaintiffs David Mota Leal ("Leal"), Enrique Mota Garcia ("Garcia") and Jose Marvin Rodriguez Lopez ("Lopez") to submit for the Court's assessment and approval a copy of the settlement agreement ("Agreement") executed by the parties in full settlement of this Action. The Agreement is being submitted contemporaneously with this letter, as **Exhibit A**.

  The parties respectfully request that the Court approve the Agreement, pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015), because the Agreement represents a fair resolution of this matter, negotiated at arm's length between experienced counsel. Further, the Court issued an Order on May 15, 2018, directing the parties to file a Stipulation of Dismissal by June 15, 2018 (*see* Docket No. 42). The parties respectfully request an extension of time to file the Stipulation of Dismissal to seven (7) days after Plaintiffs receive the Initial Payment, as defined in the Agreement.

**I. Background**

  On September 23, 2016, Plaintiffs commenced this Action by filing a Complaint that included claims of unpaid minimum wages and overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and the New York Labor Law ("NYLL"), as well as claims of failure to provide wage notices and wage statements pursuant to the New York Wage Theft Prevention Act (NYLL §§ 195.1 and 195.3), and a claim for spread of hours pay pursuant to the Minimum Wage Order of the New York Commissioner of Labor ("Minimum Wage Order"). Although the Action was initially brought as a putative

collection action, Plaintiffs never sought to certify the Action as a collective action and thus the Action did not proceed collectively. By Order, dated March 22, 2018, the Court certified that discovery in this Action was complete. By Order, dated March 30, 3018, the Court permitted this firm to substitute as counsel for Defendants (*see* Docket No. 36). The parties subsequently agreed to return to mediation with Mediator Mike McKenna, who previously mediated this matter when Defendants were represented by prior counsel. At the May 14, 2018 mediation with Mediator Mike McKenna, the parties reached a settlement in principle (Docket No. 42), the terms of which are embodied in the Agreement.

**II.     Positions of the Parties**

   **A.     Plaintiffs' Position**

      **1. David Mota Leal**

Leal was employed by Defendants from approximately 2004 (although the beginning of the limitations period for NYLL wage and hour claims is September 2010) until on or about April 2016. Throughout his employment, he worked in the retail store as a salesperson, inventory worker, stocker, and cashier. Leal was not a supervisor and his duties did not require him to exercise discretion or independent judgment. Leal worked six (6) days a week every week of his employment, for a total of approximately 73 hours each week. Consequently, Leal worked overtime on a weekly basis.

Regardless of the number of hours he worked, Leal was paid a fixed salary each week, starting at $400 per week in September 2010 and ending at $800 per week in April 2016, when he voluntarily left Defendants' employment. His weekly fixed salary increased incrementally during the employment period as follows:

- $400/week: September 2010 – December 2010
- $475/week: January 2011 – December 2011
- $525/week: January 2012 – December 2012
- $575/week: January 2013 – December 2013
- $600/week: January 2014 – April 2015
- $700/week: May 2015 – March 15, 2016
- $800/week: March 16, 2016 – April 2016

Leal was never provided with wage notices or wage statements as required by NYLL §§ 195.1 and 195.3, respectively.

      **2. Enrique Mota Garcia**

Garcia was employed by Defendants from approximately June 2009 (although the beginning of the limitations period for NYLL wage and hour claims is September 2010) until on or about April 2016. Throughout his employment, he worked in the retail store as a stocker and a renovator. Garcia was not a supervisor and his duties did not require him to exercise

discretion or independent judgment. Garcia worked six (6) days a week every week of his employment, for a total of approximately 73 hours each week. Consequently, Garcia worked overtime on a weekly basis.

Regardless of the number of hours he worked, Garcia was paid a fixed salary each week, starting at $300 per week in September 2010 and ending at $550 per week in April 2016, when he voluntarily left Defendants' employment. His weekly fixed salary increased incrementally during the employment period as follows:

- $300/week: September 2010 – December 2010
- $350/week: January 2011 – December 2011
- $400/week: January 2012 – December 2012
- $450/week: January 2013 – December 2013
- $500/week: January 2014 – December 2014
- $550/week: January 2015 – April 2016

Garcia was never provided with wage notices or wage statements as required by NYLL §§ 195.1 and 195.3, respectively.

### 3. Jose Marvin Rodriguez Lopez

Lopez was employed by Defendants from approximately December 2009 (although the beginning of the limitations period for NYLL wage and hour claims is September 2010) until on or about April 2016. Throughout his employment, he worked in the retail store as a stocker, porter, inventory worker, and a renovator. Lopez was not a supervisor and his duties did not require him to exercise discretion or independent judgment. Lopez worked six (6) days a week every week of his employment from September 2010 through November 15, 2015, for a total of approximately 73 hours each week; he worked six-and-a-half (6.5) days a week for the remainder of his employment, for a total of approximately 79 hours each week. Consequently, Lopez worked overtime on a weekly basis.

Regardless of the number of hours he worked, Lopez was paid a fixed salary each week, starting at $430 per week in September 2010 and ending at $500 per week when he worked six days a week (or $583 per week when he worked six-and-a-half (6.5) days a week) in April 2016, when he voluntarily left Defendants' employment. His weekly fixed salary increased incrementally during the employment period as follows:

- $430/week: September 2010 – December 2010
- $450/week: January 2011 – June 2011
- $475/week: July 2011 – December 2011
- $500/week: January 2012 – November 15, 2015
- $583/week: November 16, 2015 – April 2016

Lopez was never provided with wage notices or wage statements as required by NYLL §§ 195.1 and 195.3, respectively.

### B. Defendants' Position

Defendants contend that Plaintiffs' respective claims for unpaid wages and overtime compensation are grossly overstated.

#### 1. David Mota Leal

Defendants do not dispute Leal's alleged dates of employment, from approximately September 2010 until April 2016. However, Defendants dispute that Leal worked 73 hours per week (an average of 12.17 hours per day, six (6) days every week), as he alleges; Defendants contend that the hours allegedly worked by Leal are grossly inflated.

Additionally, Defendants' wage and hour records indicate that generally Leal was paid a higher weekly salary than Plaintiffs allege. For example, Leal was paid a salary each week, starting at $475 per week when his employment commenced in September 2010 and ending at $800 per week in April 2016. During his employment, Leal's weekly salary increased from $475 to $500 (in January 2011), to $550 (on/about August 21, 2011), to $600 and sometimes more (in February 2012), to $700 (in September 2012), to $800 (in January 2016). Additionally, Leal generally was paid an additional one-sixth (1/6) of his weekly salary if he worked seven days in a given week.

Further, the deposition testimony of several witnesses as well as documents obtained and produced during discovery indicate that Leal was a Manager at Star Brite, and that: (i) his primary duty was managing the enterprise; (ii) he customarily and regularly directed the work of at least two or more other full-time employees or their equivalent; and (iii) had the authority to hire or fire other employees. In addition, beginning on August 21, 2011, Leal was paid a weekly salary of not less than the amount required by the FLSA, and the Minimum Wage Order, 12 NYCRR § 142-2.14, to qualify for the executive employee exemption. Accordingly, beginning on August 21, 2011, Leal was not entitled to overtime compensation.

#### 2. Enrique Mota Garcia

Defendants deny that Garcia worked continuously from September 2010 until April 2016. Defendants' wage and hour records indicate that Garcia only worked between September 2010 and April 2016 as follows: From September 23, 2010 – January 8, 2011, for only one (1) to three (3) days per week; on October 12, 2013; from December 2013 – August 8, 2015; and from February 6, 2016 – April 28, 2016. Defendants' records indicate that Garcia *did not* work for Star Brite from January 9, 2011 – early October 2013, and that he only worked for five (5) weeks in 2013, for a total of approximately 25 hours that year. Although Garcia alleges that he worked approximately 291 weeks at Star Brite, Defendants' wage and hour records indicate that he only worked approximately 117 weeks. Defendants also dispute that Garcia worked 73 hours per week (an average of 12.17 hours per day, six (6) days every week), as he alleges. Defendants contend that the hours allegedly worked by Garcia are grossly inflated.

{00598936.DOC.5}

Defendants' wage and hour records further indicate that generally Garcia was paid a higher weekly wage than Plaintiffs allege. For example, from December 2013 – August 8, 2015, and from February 6, 2016 – April 28, 2016, Garcia received $550 per week when he worked six (6) days in a week. Garcia generally was paid an additional one-sixth (1/6) of that weekly pay if he worked seven (7) days in a given week.

### 3. Jose Marvin Rodriguez Lopez

Defendants deny that Lopez worked continuously from September 2010 until April 2016. In fact, Defendants' wage and hour records indicate that Lopez commenced employment at Star Brite in August 2015 and his employment ended just eight (8) months later, in April 2016. Lopez never worked for Star Brite in 2010, 2011, 2012, 2013, or 2014, as Plaintiffs allege. Although Lopez alleges that he worked approximately 290 weeks at Star Brite, Defendants' wage and hour records indicate that he only worked for approximately 37 weeks. Defendants also dispute that Lopez worked 73 hours per week (an average of 12.17 hours per day, six (6) days every week) through November 15, 2015, and 79 hours per week (an average of 12.15 hours per day, seven (7) days every week) thereafter until April 2016. Defendants contend that the hours allegedly worked by Lopez are grossly inflated.

Defendants' wage and hour records further indicate that generally Lopez was paid a higher weekly wage than Plaintiffs allege. For example, from August 2015 – April 2016, Lopez received $550 per week when he worked six (6) days in a week. Lopez generally was paid an additional one-sixth (1/6) of that weekly pay if he worked seven (7) days in a given week.

## III. The Agreement is Fair and Reasonable

As reflected in the accompanying Agreement, the parties have agreed to settle this case for a total of $248,000 (the "Settlement Amount"), including attorneys' fees and costs, to resolve all of Plaintiffs' claims against Defendants regarding Defendants' compensation of Plaintiffs during their respective employment with any Defendant and any other claims alleged in the Complaint and all wage and hour claims which could have been alleged. The Settlement Amount shall be payable in five (5) payments, the first of which, for $60,000, is to be made within thirty (30) days after Court approval of the Agreement and dismissal of this Action with prejudice, and the balance of which is to be paid in four (4) equal installments of $47,000, each of which is to be made no later than six (6) months after the deadline for making the previous payment.

The Settlement Amount will be paid as outlined in Paragraph 1 of the Agreement. $40,010.66 of the Settlement Amount will be paid to Leal, $66,629.33 of the Settlement Amount will be paid to Garcia, and $58,693.33 of the Settlement Amount will be paid to Lopez. The remaining $82,666.67 of the Settlement Amount will be applied as Plaintiffs' attorneys' fees and costs.

Plaintiffs estimate that, in a "best case scenario" at trial, they would be entitled to approximately $459,449.20, inclusive of $175,659.04 in unpaid minimum wages and

overtime compensation, liquidated damages, spread of hours pay, damages for failure to provide wage notices and wage statements, and prejudgment interest, plus attorneys' fees and costs. Defendants estimate that if they were to succeed at trial, including on the issue of Leal qualifying for the executive employee exemption, Plaintiffs' recovery would be reduced significantly, to approximately 20% of Plaintiffs' "best case scenario," plus attorneys' fees and costs. Alternatively, Defendants estimate that if they were to succeed at trial, but not on the issue of Leal qualifying for the executive employee exemption, Plaintiffs' recovery would still be reduced significantly, to approximately 37% of Plaintiffs' "best case scenario," plus attorneys' fees and costs. However, the parties believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about the value of Plaintiffs' claims.

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012); *see Flores v. Food Express Rego Park, Inc.*, No. 15-CV-1410 (KAM) (SMG), 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016). In considering whether a settlement is fair and reasonable, the principal question is whether the agreement reflects "a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751 (RRM) (RER), 2017 WL 2778029, at *1 (E.D.N.Y. June 26, 2017) (quoting *Le v. SITA Info. Networking Computing, USA, Inc.*, No. 07-CV-86 (JS) (MLO), 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)); *see also In re Penthouse Executive Club Compensation Litig.,* No. 10-Civ.-1145 (KMW), 2014 WL 185628, at *7 (S.D.N.Y. Jan. 14, 2014) (noting the inherent adversarial nature of a litigated FLSA case is "an adequate indicator of fairness of settlement").

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached during court-annexed mediation as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions. "The mediated settlement negotiations [] and contested nature of the litigation, are evidence of arm's length bargaining between experienced counsel, with no possibility of fraud or collusion." *Ezpino v. CDL Underground Specialists, Inc.*, No. 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *2 (E.D.N.Y. June 30, 2017), *report and recommendation adopted*, No. CV-14-3173 (DRH) (SIL), 2017 WL 3037406 (E.D.N.Y. July 17, 2017); *Low v. Tian Yu, Inc.*, No. 12-Civ.-7237 (HBP), 2016 WL 1444725, at *1 (S.D.N.Y. Mar. 31, 2016) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.") (internal citation and quotations omitted).

Moreover, in light of various disputes concerning Plaintiffs' claims, this settlement should be approved. First, Plaintiffs' calculations are based on their own recollections about their respective work schedules and pay, over a multi-year period. Plaintiffs have no records of their own of their hours worked or compensation received. As discussed above, Defendants' wage and hour records indicate that Garcia only worked approximately 117 of the 291 weeks he alleges he worked, and Lopez only worked approximately 37 of the 290 weeks he alleges he worked. Further, Defendants' wage and hour records indicate that Star

Brite generally paid Plaintiffs a higher weekly wage than they allege, and Defendants further contend that Plaintiffs' alleged work hours are grossly inflated. Plaintiffs, in calculating potential damages, assume that they never missed any days of work – no sick days, no vacation days, no holidays – in the time that they each worked for Defendants. That assumption was made for settlement purposes, for calculating the maximum that Plaintiffs *could* be entitled to. Even if Defendants were able to establish even a few missed days here and there for each Plaintiff, it would further reduce the amounts Plaintiffs are entitled to.

By settling now, Plaintiffs receive almost the full amount (approximately 94%) of their underlying minimum wage and overtime claims ($175,659.04) as calculated by Plaintiffs, even after attorneys' fees are accounted for, while enabling the parties to avoid the risks inherent in any trial. Based on the parties' respective assessment of litigation risks, which risks were discussed thoroughly with Plaintiffs by their attorneys and Defendants by the undersigned, the parties made the decision to settle this Action for $248,000.

### IV.    Plaintiffs' Attorneys' Fees Are Fair and Reasonable

Under the settlement, Plaintiffs' counsel will receive $82,666.67 from the settlement fund as attorneys' fees and costs. This represents one-third of the settlement amount, a reduction in fees from what is identified in the Plaintiffs' retainer agreements, which provides that forty percent of the Plaintiffs' recovery will be retained by the firm.

The amount provided to the Plaintiffs' counsel under the settlement is fair and reasonable as it is consistent with the range of fees typically awarded in cases in this Circuit. *See Castaneda v. My Belly's Playlist LLC,* No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation); *see also Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit"). In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiffs' requested award is reasonable. *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. at 60; *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

Given Plaintiffs' counsel's significant experience representing plaintiffs in New York City in wage and hour litigation, Plaintiffs' counsel was able to obtain a favorable pre-trial result due to the Parties' cooperative exchange of information and frequent negotiations.

Attached hereto as **Exhibit B**, are Plaintiffs' attorneys' time records. A brief biography of each attorney who performed billed work in this matter is as follows:

- Mr. Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). Mr. Faillace taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall

University Law School from 1995 to 1998, and is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.

- Sara Isaacson is an associate at Michael Faillace & Associates, P.C. She graduated from Benjamin N. Cardozo School of Law in 2015. During law school, Ms. Isaacson worked as a law clerk at the employment firm of Virginia & Ambinder, LLP. After graduating law school, Ms. Isaacson worked at a commercial litigation firm which also specialized in the defense of wage and hour litigation. Since joining Michael Faillace & Associates, P.C. in May 2017, she has been responsible for all aspects of the firm's employment docket in federal court.

The requested attorneys' fees and costs in the parties' settlement are reasonable under the circumstances and Plaintiffs have agreed to these fees and costs by agreeing to the settlement amount. As a result, the fees should be approved.

*     *     *

For all of the reasons set forth above, the parties respectfully request that the Court approve the Agreement and extend the parties' time to file the Stipulation of Dismissal to seven (7) days after Plaintiffs receive the Initial Payment, as defined in the Agreement.

We thank the Court for its continued attention to this matter.

Respectfully submitted,

ELLENOFF GROSSMAN & SCHOLE LLP

Amanda M. Fugazy
Paul P. Rooney
Robert J. Anderson

cc: Sara Jacqueline Isaacson, Esq. (by ECF)

{00598936.DOC.5}